# IN THE COURT OF APPEALS OF IOWA

No. 19-1116
Filed September 25, 2019

**IN THE INTEREST OF L.R.,**
**Minor Child,**

**L.R., Father,**
 Appellant.
_____


 Appeal from the Iowa District Court for Black Hawk County, Daniel L. Block, Associate Juvenile Judge.


 The father appeals the termination of his parental rights to his child. **AFFIRMED.**


 Andrew C. Abbott of Abbott Law Office, P.C., Waterloo, for appellant father.

 Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

 Melissa Anderson-Seeber of Juvenile Public Defender's Office, Waterloo, guardian ad litem for minor child.


 Considered by Potterfield, P.J., and May and Greer, JJ.

**POTTERFIELD, Presiding Judge.**

The father appeals the termination of his parental rights to his nine-year-old son.[1]  The juvenile court terminated the father's rights pursuant to Iowa Code section 232.116(1)(d), (e), and (f) (2018).  The father challenges the statutory grounds for termination, maintains the juvenile court should have applied a permissive factor to avoid termination, and argues an extension of time to work toward reunification is in the child's best interests.[2]

We review termination proceedings de novo.  *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012).  When the juvenile court terminates parental rights on more than one statutory ground, we may affirm on any ground we find supported by the record.  *Id.* at 774.  Here, we review the evidence supporting section 232.116(1)(f), which allows for termination when:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

The father contests only the fourth element—whether the child could be returned to his care at the time of the termination hearing.  *See* Iowa Code § 232.116(1)(f)(4); *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting "at the present time" to mean at the time of the termination hearing).  He argues the only reason L.R. could not come home at the time of the termination hearing

---

[1] The child was nine at the time of the termination hearing.
[2] The mother's parental rights were also terminated.  She does not appeal.

was L.R.'s continued need to remain in a psychiatric medical institute for children (PMIC). We disagree.

The Iowa Department of Human Services (DHS) became involved with the family this time due to allegations the father physically abused L.R.[3] L.R. reported his father hit him in the eye, pulled him by the hair, and hit his face against the wall. L.R. was observed to have a bruise on his face; a red, swollen eye; scratches on his torso; and healed scratches on his arm. The father denied the allegations and provided a note that purported to be from L.R.'s school stating that L.R. was injured in a fight with another student. DHS learned the note had been altered, which the father originally blamed on his paramour before later taking responsibility. The juvenile court concluded the father had caused L.R.'s injuries and ordered the father to participate in mental-health therapy and parenting-skill classes. In spite of being ordered to do so, the father failed to participate in either during the seventeen months between removal and the termination proceedings. The father never took responsibility for his actions and took no steps to address the underlying causes of removal.

L.R. was diagnosed with disruptive mood dysregulation disorder during the course of the proceedings. Before being moved to the PMIC, L.R. displayed aggressive, violent tantrums, during which he would hit and kick. L.R. was sometimes unable to calm himself, and he struggled to sit still and engage in a conversation. L.R. was uncontrollable at times. He had been kicked out of his school and his daycare, and his psychologist refused to treat him anymore.

---

[3] L.R. has been the subject of a number of founded reports of child abuse. He was previously adjudicated a child in need of assistance; that case was closed, and L.R. was returned to the sole care of the father in March 2015.

At the time of the termination hearing, L.R. was taking prescription medication and was engaged in therapy. He showed a marked improvement in his behaviors, which L.R. also recognized in himself. L.R. was described as happier, calmer, and better able to interact with others. The professionals who engaged with L.R. at the institution testified that L.R. would need to continue his medication and therapy after his expected discharge in June 2019. Moreover, in order to continue his improved behavior, L.R. would need consistency and stability in parenting as well as help with healthy coping mechanisms.

We cannot say the father can provide these things for L.R. When L.R. was returned to the father's care in 2015, it was recommended L.R. engage in therapy and behavioral health intervention services; the father did not follow through, so L.R. did not participate. During L.R.'s removal this time, the father was resistant to allowing L.R. to take medication for his mental-health needs and seemed to be in denial regarding the severity of L.R.'s behaviors—in spite of a lengthy history of behavioral difficulties in school. Moreover, the father has his own mental-health diagnoses, for which he has failed to engage in treatment. Another concern is whether the father will be consistently available to parent L.R., as the father has tested positive for marijuana multiple times throughout the pendency of the proceedings, which is a violation of the terms of his probation and for which he has served jail time as a result  The father has not addressed his use of marijuana.

Due to the father's failure to address the physical-abuse concerns, his history of not getting L.R. involved with the services he needs, and his neglect of his own mental-health needs, we agree with the juvenile court that L.R. could

not be returned to the father's care without risk of further adjudicatory harm. *See* Iowa Code § 232.116(1)(f)(4).

The father maintains the juvenile court should have applied the permissive factors of section 232.116(3)(c) and (d) to save the parent-child relationship. These factors allow the court not to terminate when it "would be detrimental to the child due to the closeness of the parent-child relationship" or when it is "necessary to place the child in a hospital, facility, or institution for care and treatment and the continuation of the parent-child relationship is not preventing a permanent family placement for the child." *Id.* § 232.116(3)(c), (d). The father has not proved that termination of his rights would be detrimental to L.R. *See In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018) (providing the parent has the burden to establish the application of a permissive factor is warranted). In fact, at the termination hearing, the guardian ad litem stated that in his discussion with the child, L.R. indicated that he supported termination of father's rights and wanted to live with his fictive grandmother,[4] who is a licensed foster care provider and with whom L.R. was placed before he was moved to the PMIC. The grandmother participated in the termination proceedings and informed the court she was committed to doing what was best for L.R. "for the duration," including caring for him and adopting him if that was needed. And while the father's relationship with L.R. did not directly interfere with L.R.'s placement at the PMIC, we are not persuaded these are appropriate circumstances to apply this permissive factor; termination of the father's parental

---

[4] The grandmother is not biologically or legally related to L.R., but she took on a maternal role with the father when he was younger and acts as a grandmother to L.R.

rights is still in L.R.'s best interests. *See In re M.H.*, No. 14-0884, 214 WL 4635462, at *3 (Iowa Ct. App. Sept. 17, 2014) (considering the application of section 232.116(3)(d)).

Finally, we consider the father's request for additional time to work toward reunification. We acknowledge the father has employment, a safe home, and is apparently the parent to a new child who is still in his and his paramour's care. But other than keeping in contact with L.R. throughout the proceedings, the father did little else to be able to resume care of L.R. or to show that he can meet L.R.'s special needs. *See* Iowa Code § 232.104(2)(b). Based on his lack of participation in services throughout the proceedings and his ongoing claims that none are needed, we cannot say the father will be able to care for L.R. at the end of a short extension.

For all the reasons listed herein, we affirm the termination of the father's parental rights.

**AFFIRMED.**